UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SYLVIA PINO,                         :
    Plaintiff,                       :
                                     :
v.                                   : Civil No. 3:17CV26 (AWT)
                                     :
NANCY A. BERRYHILL,                  :
ACTING COMMISSIONER OF SOCIAL        :
SECURITY,                            :
    Defendant.                       :

**ORDER REMANDING CASE**

For the reasons set forth below, the decision of the Commissioner is reversed and this case is remanded for additional proceedings consistent with this order.

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson

v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is "more than a mere scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

Here, the plaintiff claims that the ALJ did not apply the correct legal principles because he "failed to properly evaluate Ms. Pino's pain and functional limitations imposed by her pain, as described in her testimony; and 2) failed to properly determine Ms. Pino's Residual Functional Capacity." Pl.'s Mem. to Reverse ("Doc. No. 15-1") at 2. The defendant argues that the Administrative Law Judge's "decision is supported by substantial evidence and is based upon the application of the correct legal standards." Def.'s Mem. to Affirm (Doc. No. 19-1) at 1.

In order to determine whether a claimant is disabled within the meaning of the Social Security Act, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if so, ask

whether, based solely on the medical evidence, the claimant has an impairment that "meets or equals" an impairment listed in Appendix 1 of the regulations; if so, and the claimant meets the duration requirements, the ALJ will find him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the ALJ asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity ("RFC") to perform his or her past work; and (5) if not, determine whether there is other work which the claimant could perform. See 20 C.F.R. § 416.920(a)(4)(i)—(v).

In substance, the plaintiff challenges the ALJ's credibility findings when determining the RFC at Step Four. "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account . . . ." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 416.929); Connors v. Connecticut General Life Ins. Co., 272 F.3d 127, 136 (2d. Cir. 2001) ("It has long been the law of this Circuit that the subjective element of pain is an important factor to be considered . . . ." (citation and internal quotation marks omitted)). The Social Security regulations provide a two-step process for evaluating assertions of pain: First, determine whether there is a medically determinable physical impairment shown by medically acceptable clinical and laboratory diagnostic techniques that

3

could reasonably be expected to produce the plaintiff's pain; and second, evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which those symptoms limit the individual's ability to do basic work activities. See 20 C.F.R. § 416.929(a)-(c); SSR 96-7p[1]. See also 42 U.S.C. § 423(d)(5)(A).

In this case, the ALJ found that the plaintiff's left knee meniscal tear was a severe impairment (R. at 25) and that the medically determinable impairment could reasonably be expected to produce the plaintiff's pain (R. at 29) but found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms" were "not entirely credible" (R. at 29) because "[t]he documentary medical evidence of record does not support a finding of the level of limitation alleged" by the plaintiff (R. at 30). Consequently, the ALJ did not credit her statements and incorporate them into the RFC except to the extent "portions thereof support the assigned" RFC (R. at 32).

"In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the regulations require that "any statements of the individual

---

[1] SSR 16-3p superseded 96-7p but is inapplicable because it became effective on March 28, 2016, after the date the ALJ issued his Decision, i.e. April 24, 2015.

4

concerning his or her symptoms must be carefully considered if a fully favorable determination or decision cannot be made solely on the basis of objective medical evidence." 20 C.F.R. § 416.929; SSR 96-7p.

Pursuant to 20 C.F.R. § 416.929(c), when assessing the credibility of an individual's statements, in addition to objective medical evidence such as "reduced joint motion, muscle spasm and sensory deficit", the ALJ must consider other kinds of evidence such as longitudinal history, information provided by medical and nonmedical sources and evidentiary inconsistencies and conflicts. The ALJ must also consider seven specific factors: (i) daily activities, (ii) location, duration, frequency, and intensity of pain or other symptoms, (iii) precipitating and aggravating factors, (iv) type, dosage, effectiveness, and side effects of medication, (v) treatment other than medication used for relief of pain or other symptoms, (vi) any measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restriction due to pain or other symptoms. See 20 C.F.R. § 416.929(c)(3); SSR 96-7p.

"When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable

5

effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p.

"The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion . . . . The reasons for the credibility finding must be grounded in the evidence and articulated" and "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. See also Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (The basis for the credibility finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record.") (citing Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 643 (2d Cir. 1983)). "This [] is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision." SSR 96-7p.

In part, the ALJ supported his conclusion that the plaintiff's alleged limitations were not entirely credible with the MRIs taken on February 19, 2013 and March 6, 2015, the physical therapy records from September 17, 2013 through October 31, 2013, and Dr. Boland's neurological reports of the May 20, 2014 and July 24, 2014 consultations.

As to the February 19, 2013 MRI, the Decision states:

6

> An MRI from February 2013 found a small radial tear of the lateral meniscus and an underlying cartilage fissure. (Exhibit 4F) Around this time, physical examination findings revealed a full range of motion and no evidence of swelling . . .

R. at 28 (citing Ex. 8F). This mischaracterizes the report and the evidence. As to the report, the findings included

> a linear full thickness articular cartilage fissure through mid to posterior lateral tibial plateau . . . . underlying osteochondral lesion in the lateral tibial plateau with moderate surrounding bone marrow edema likely reactive changes. There is a small overlying radial tear involving the free edge of the lateral meniscus at its junction of the body and posterior horn.

Ex. 4F at R. 273, Ex. 5F R. at 312.

As to the reference to a "full range of motion", the physical therapy records the ALJ relied on noted:

| 9/17/13 | [minus] 4 degrees extension with pain | 104 degrees flexion with pain |
|---|---|---|

See Exs. 5F, R. at 342; 8F, R. at 399.

| 10/14/13 strength testing limited by pain | 0 degrees extension | 120 degrees flexion |
|---|---|---|

See Ex. 5F, R. at 338; 8F, R. at 394.

| 10/31/13 strength testing limited by pain | 0 degrees extension | 120 degrees flexion |
|---|---|---|

See Ex. 5F, R. at 336; 8F, R. at 402. Although the plaintiff met her initial range of motion goal of 0 extension, 120 flexion (see 5F, R. at 343; 8F, R. at 400), it does not appear that full

7

range of motion[2] is the same as her goal range given that her goals also included decreasing pain level only from 10/10 to 7/10[3], and that strength testing was limited by pain.

As to the reliance on "no evidence of swelling" (R. at 28), the court notes that the MRI findings include "edema" which "is the medical term for swelling", and it can cause pain and affect ambulation[4]

As to the March 6, 2015 MRI, the Decision relied on a finding of "only mild meniscal degeneration without definite tear. (Exhibit 9F)" (R. at 28, 30). Again, this mischaracterizes the MRI findings:

> There is mild increased signal within the posterior horn of the medial meniscus extending toward but not clearly through the inferior articular surface suggestive of degeneration without definite tear . . . . There is irregularity and thinning of the posterior patellar cartilage along its medial fact as well as on the midline. There is a small focus of subjacent marrow edema [of] the posterior patella on the midline. There is a small focus of irregularity and abnormal signal in the subchondral lateral tibial plateau. There is slight heterogeneity of the overlying articular cartilage. There is a small joint effusion.

---

[2] The ALJ did not inquire as to what the standards are for normal range of motion. The court takes judicial notice of the fact that, for example, the Centers for Disease Control and Prevention's published standards for the normal range of motion of a 40-year-old female, the plaintiff's age at the time, which were 1.6 (1.1-2.1) degrees of extension and 141.9 (140.9-142.9) degrees of flexion. See Centers for Disease Control and Prevention, Normal Joint Range of Motion Study, https://www.cdc.gov/ncbddd/jointrom/ (last visited 3/21/18).
[3] See Ex. 5F, R. at 343.
[4] What Is Edema?, https://www.webmd.com/heart-disease/heart-failure/edema-overview#1 (last visited 3/21/18).

8

(R. at 403, 404). Thus, mild meniscal degeneration was not the only finding. Also, here too, there is a finding of "edema" and "joint effusion", which is a medical term for "swollen joints", a condition that can also cause "[d]eep, aching pain".[5] The report also notes that the MRI is suboptimal due to the plaintiff moving during the imaging. See R. at 403, 404.

As to the physical therapy treatments, the Decision states that "the claimant consistently demonstrates a normal gait." R. at 30. The records relied on state the opposite. See Ex. 5F, R. at 341 (on 9/17/14 "ambulates with antalgic gait, severe limp, lacking total knee extension"), at 343 (on 9/17/13 one of goals is to be "less antalgic"), at 338 (on 10/14/13 "gait unchanged"), at 336 (on 10/31/13 "antalgic gait unchanged").

The Decision also states that "the claimant consistently reported a reduction of her pain followed by reports of total resolution of her pain", "improvement of her gait and a greater ability to function[] (Exhibit 5F)" (R. at 30) and that "after completing approximately one month of therapy, the claimant requested discharge, stating that she did not find the therapy to be helpful. (Exhibit 8F)" (R. at 28).

---

[5] WebMD, Swollen Joints (Joint Effusion), https://www.webmd.com/arthritis/swollen-joints-joint-effusion#1 (last visited 3/21/18).

9

Again, the Decision mischaracterizes the evidence. As reflected above, Exhibit 5F does not support a finding that the plaintiff's gait improved. Although the record does include an assessment during the period of September 25 through October 23, 2013 that indicates that the patient is doing very well, has increased range of motion, decreased pain and increased function, that record is for a person named Brandy Pelliccio, not for the plaintiff. See Ex. 5F, R. at 340. It is unclear whether the ALJ relied on this document because he has not cited to the exhibits with sufficient specificity to enable the court to make that determination.

For the initial evaluation on September 17, 2013, the physical therapist ("PT") noted the history of the injury, her observations, the results of objective range of motion testing and her assessment.

Under "history of injury", the therapist noted pain from a patellar fracture that had been getting progressively worse, complaints of "buckling" with ambulation, subjective reports of "constant, high intensity" pain, use of pain medications (tramadol[6], ibuprofen, Meloxicam)[7], use of a knee

---

[6] Also known as Ultram. See R. at 375.
[7] The court notes and the ALJ should consider on remand that in addition to the noted medications, the record reveals that the plaintiff had been prescribed Vicodin when not taking tramadol (R. at 375) and Cymbalta (R. at 377).

brace mostly with sitting, and a scheduled orthopedic visit. Ex. 5F, R. at 341.

As to "observations", the therapist notes "no acute distress but moderate muscle guarding", "difficulty transitioning during evaluation" and that the patient "ambulates with antalgic gait, severe limp and lacks total knee extension". Ex. 5F, R. at 341.

As to objective range of motion testing, the therapist noted 104 degrees of knee flexion and minus 4 degrees of extension, both with pain, and she listed "standing/sitting too long, has to continually move knee" as the "functional status" or "ADL limitations". Ex. 5F, R. at 342.

As to the assessment, the PT noted a "lateral meniscal tear" and "full thickness" cartilage tear, increased left knee pain and weakness, decreased range of motion and gait, sent for treatment to relieve pain, improve function and prepare for possible surgery. Ex. 5F, R. at 343.

On October 14, 2013, under "objective data" it is noted that "strength" is "limited by pain"; under "assessment", "some progress despite her function and pain remaining unchanged", and "will benefit from continuing with treatment for one more month". Ex. 5F, R. at 338.

On October 23, 2013, under "subjective" the PT noted that the plaintiff was "not having any pain today" and under

11

"assessment" that she tolerated the exercises well "with no increased pain"; on October 28, 2013, under "subjective", the PT noted that Ms. Pino had "no real pain"; however, the "assessment" indicated "progressing but slowly". Ex. 8F, R. at 392.

Finally, on October 31, 2013, under "objective data", for "strength", the PT noted "limited by pain"; for "function", "antalgic gait unchanged" and "no increase in distance of ambulation"; for "assessment", "little significant change in her condition . . . some . . . decreased pain but continues to report that her knee is 'no better' . . . orthopedist on 11/1. She will be discharged at this time to ortho consult and home exercise program". Ex. 5F, R. at 336.

The physical therapy records, taken as a whole, cannot be said to provide substantial evidence for a conclusion that there had been total resolution of pain, gait improvement, or greater ability to function, or that the plaintiff requested discharge stating that "she did not find therapy helpful." R. at 28.

As to Dr. Boland's neurological reports, the Decision states:

> Overall, the treatment records state that diagnostic testing has revealed diffuse neuropathy, however, it is stated that the claimant is able to handle this

12

> well and that she experiences "surprisingly" few
> symptoms of her condition. (Exhibit 7F) Although
> the claimant has testified otherwise, the clinical
> findings and observations of her treating sources do not
> support the level of limitation alleged.

R. at 30. This mischaracterizes the reports. Dr. Boland's report actually states:

> There were no recordable sensory responses in the left arm or feet and low responses in the right arm. . . . Ms. Pino has a sensory neuropathy or neuronopathy, which is quite remarkable on EMG, but she has surprisingly little symptoms, other than feeling the numbness in her left arm where the sensory loss is more severe; however, she has significant enough sensory loss in the other limbs that it is surprising she does not notice this. This to me means that it has likely been present for even much longer than the 3 years she has recognized the left arm numbness.

R. at 367. Rather than support a finding that the plaintiff lacks credibility, Dr. Boland's reports seem to indicate that her condition is much worse than her subjective symptoms suggest.

The court concludes that this case must be remanded because, at minimum, the Decision relies on mischaracterizations of the MRIs, the PT records and both of the neurologist's reports to discredit the plaintiff's alleged pain and limitations. On remand, when evaluating the plaintiff's pain, the ALJ must carefully consider all of the evidence in the case record, and also develop the record and make every reasonable effort to resolve inconsistencies, conflicts or evidentiary gaps as required by 20 C.F.R. § 416.929, SSR 96-7p and the treating physician rule. After carefully consider all of the evidence, including the seven factors referenced above, the ALJ shall set

13

forth his findings with sufficient specificity to make clear to the plaintiff and to a reviewing court the specific weight he gave to the plaintiff's statements and the reasons for that weight[8], so as to give the plaintiff a full and fair review of her claim and to ensure a well-reasoned decision. The court does not address the plaintiff's second argument because reconsideration of the evidence may change the RFC.

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (Doc. No. 15) is hereby GRANTED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 19) is hereby DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order.

The Clerk's Office is instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the undersigned.

---

[8] For example, the ALJ "noted . . . . very limited work history. . . . when considered in light of the limited clinical findings . . . raises a question as to whether her continuing unemployment is truly the result of her impairments as opposed to other reasons." R. at 31. This finding must be based on the evidence in the record and substantiated with specificity to enable review. The statement "when considered in light of the limited clinical findings" is insufficiently specific to enable review of how the evidence supports the ALJ's conclusion. The same is true for the finding that transportation services were denied because the plaintiff was no longer pregnant. See R. 32 and compare with R. 268.

The Clerk shall close this case.

It is so ordered.

Dated this 22nd day of March 2018, at Hartford, Connecticut.

                                                /s/AWT
                                        Alvin W. Thompson
                               United States District Judge